UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

PETER S. KOEPPEL                                    CIVIL ACTION

VERSUS                                                     NO. 21-320

HARTFORD ACCIDENT &                          SECTION "R" (5)
INDEMNITY CO.

## ORDER AND REASONS

Before the Court is defendant Hartford Accident and Indemnity Company's ("Hartford") motion for partial summary judgment on plaintiff's bad-faith claims under Louisiana Revised Statutes sections 22:1892 and 22:1973.[1] Plaintiff Peter Koeppel opposes the motion.[2] Because there is no evidence that Harford acted arbitrarily, capriciously, or without probable cause, the Court grants defendant's partial motion for summary judgment and dismisses Koeppel's claims of bad faith.

## I.    BACKGROUND

This case arises out of a February 14, 2020 car accident at the intersection of North Cortez Street and Bienville Street in New Orleans.[3] The

---

[1]    R. Doc. 16.
[2]    R. Doc. 24.
[3]    R. Doc. 16-3 at 1; R. Doc. 24-2 at 3.

accident occurred when the alleged tortfeasor, Tonja Issac, hit the passenger side of plaintiff's vehicle at the intersection.[4] After the accident, neither party called the police or went to the hospital.[5] Instead, Issac admitted that she was at fault, and the two parties exchanged insurance information.[6] At the time of the accident, Koeppel had an insurance policy with Hartford, which included uninsured/underinsured motorist bodily injury ("UMBI") coverage,[7] and Issac had an insurance policy with Old American Indemnity Company ("Old American").[8]

On May 27, 2020 plaintiff submitted his initial proof of loss to his UMBI provider, Hartford.[9]   In Koeppel's initial request, he informed Hartford of the accident and that he was "in the process of settling" with the tortfeasor's liability insurer, Old American, for Issac's policy limit of $15,000.[10] But because his damages exceeded Issac's liability policy limits, plaintiff requested a settlement with Hartford "under the uninsured/underinsured provision of [his] policy in the amount of the policy

---

[4]     R. Doc. 24-2 at 13.
[5]     *Id.* at 6-7, 16.
[6]     *Id.*
[7]     R. Doc. 16-4 at 5 (Plaintiff's Responses to Requests for Production of Documents).
[8]     R. Doc. 16-7 at 6 (Plaintiff's Answers to Interrogatories).
[9]     R. Doc. 16-5 at 2 (May 27, 2020 Letter).
[10]    *Id.*

limits."[11]  Attached to the proof-of-loss notice, plaintiff included some of his medical records, which he asserts supported his claim that his damages exceeded Issac's policy limit of $15,000.[12]  Plaintiff continued to supplement his initial proof of loss by submitting additional medical records and expenses to Hartford.[13]  Plaintiff states that his attorney did not receive a response from Hartford within sixty days, and alleges that Hartford failed to perform "any investigation" within sixty days after receiving plaintiff's proof-of-loss notice.[14]

On June 28, 2020, plaintiff filed a complaint in state court against Issac and Old American.[15]  In his complaint, plaintiff alleged that, as a "direct and proximate result" of Issac's negligence in "disregarding a stop sign," he sustained injuries to his "back and lower extremities."[16]  On July 27, 2020, plaintiff filed an amended complaint naming Hartford as a defendant, alleging that Hartford failed to tender payment within the statutorily prescribed time period after receipt of plaintiff's satisfactory proof of loss,

---

[11]     *Id.*

[12]     R. Doc. 24-1 at 6.

[13]     *Id.*

[14]     *Id.*

[15]     R. Doc. 1-2 (Initial Complaint).

[16]     *Id.* ¶ 10; *see also* R. Doc. 16-7 at 2 (Plaintiff's Answers to Interrogatories).  In his response to defendant's interrogatories, plaintiff also noted that the accident "aggravated injuries to [his] neck, left arm[,] and hand." *Id.*

and that such "denial of coverage was arbitrary, capricious, [and] in bad faith," in violation of La. Rev. Stat. §§ 22:1892 and 22:1973.[17]  In addition to seeking payment of his UMBI benefits from Hartford, Koeppel also seeks statutory penalties against Hartford for its failure to adjust his claim fairly and promptly.[18]  Koeppel subsequently reached a settlement with Old American and Issac, and voluntarily dismissed those parties from the lawsuit.[19]  Following the notice of partial dismissal, Hartford removed the case to this Court on the basis of diversity jurisdiction.[20]

Defendant now seeks partial summary judgment on plaintiff's claims for bad-faith failure to tender.[21]  Defendant asserts that plaintiff cannot maintain his bad-faith claims because there is no evidence that Hartford acted arbitrarily, capriciously, or without probable cause in refusing to tender UMBI benefits, because plaintiff has failed to establish satisfactory proof of loss.  Specifically, defendant asserts that it has not received satisfactory proof (i) that the tortfeasor was underinsured, or (ii) that plaintiff's alleged injuries were causally related to the accident.[22]  Plaintiff

---

[17]    R. Doc. 1-3 ¶¶ 16-22 (First Amended Petition for Damages).

[18]    *Id.*

[19]    R. Doc. 1-8 at 2 (Motion and Order for Partial Dismissal).

[20]    R. Doc. 1.

[21]    R. Doc. 16.

[22]    *Id.* at 16-1 at 10.

opposes the motion, arguing that Hartford had adequate knowledge of the underinsured status of the tortfeasor, and that plaintiff's medical records furnished to Hartford established causation.[23]   The Court considers the parties' arguments below.

## II.   LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).   "When assessing whether a dispute to any material fact exists, [the Court] consider[s] all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."  *Delta & Pine Land Co. v. Nationwide Agribusiness Ins.*, 530 F.3d 395, 398-99 (5th Cir. 2008).  All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."  *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quoting

---

[23]   R. Doc. 24-1 at 3.

10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2738 (2d ed. 1983)); *see also Little*, 37 F.3d at 1075. "No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991) (quoting *Golden Rule Ins. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)). "[T]he nonmoving party can defeat the motion" by either countering with evidence sufficient to demonstrate the "existence of a genuine dispute of material fact," or by "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by

submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for resolution. *See, e.g., id.*; *Little*, 37 F.3d at 1075 ("Rule 56 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" (quoting *Celotex*, 477 U.S. at 322)).

## III.  DISCUSSION

Hartford seeks summary judgment on plaintiff's claims that it acted in bad faith by failing to timely investigate and pay his UMBI claim. Louisiana law authorizes the recovery of bad-faith penalties from insurers under two provisions. Under Louisiana Revised Statutes section 22:1892, "all insurers . . . shall pay the amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss from the insured or any party in interest." La. Rev. Stat. § 22:1892(A)(1). If an insurer fails to pay a claim within thirty days of receiving satisfactory proof of loss, it is subject to penalties if its conduct is "found to be arbitrary, capricious, or without probable cause." La. Rev. Stat. § 22:1892(B)(1)(a). In addition, section

22:1973 imposes a duty on insurance companies to act in good faith and provides for penalties if an insurer fails to pay a claim within sixty days after receipt of satisfactory proof of loss when "such failure is arbitrary, capricious, or without probable cause." La. Rev. Stat. § 22:1973 (B)(5).

To recover these statutory penalties, a claimant must demonstrate "that his insurer (1) received satisfactory proof of loss, (2) failed to pay within the required time,[24] and (3) acted in an arbitrary and capricious manner." *La. Bag Co., Inc. v. Audubon Indem. Co.*, 999 So. 2d 1104, 1112-13 (La. 2008). "Satisfactory proof of loss" is a showing "sufficient to fully apprise the insurer of the insured's claims." *McDill v. Utica Mut. Ins. Co.*, 475 So. 2d 1085, 1089 (La. 1985). To establish a "satisfactory proof of loss" of an uninsured/underinsured motorist claim, the insured must prove that the insurer was "fully apprise[d]" that "(1) the owner or operator of the other vehicle involved in the accident was uninsured or underinsured; (2) that he was at fault; (3) that such fault gave rise to damages; and (4) establish the extent of those damages." *Id.*

A plaintiff who brings a claim for bad-faith penalties against an insurer must first demonstrate that the insurer received satisfactory proof of loss as

---

[24]    La. Rev. Stat. § 22:1892 sets a statutory time period of thirty days, and La. Rev. Stat. § 22:1973 set a statutory time period of sixty days.

a predicate to demonstrating that the insurer's action was arbitrary and capricious. *Reed v. State Farm Mut. Auto. Ins. Co.*, 857 So. 2d 1012, 1020 (La. 2003). The Louisiana Supreme Court has interpreted the phrase "arbitrary and capricious" to mean "vexatious," *La. Maint. v. Certain Underwriters*, 616 So. 2d 1250, 1253 (La. 1993), and has explained that a "vexatious" refusal to pay is a refusal that is "unjustified, without reasonable or probable cause or excuse," *La. Bag Co.*, 999 So. 2d at 1114 (citing *Reed*, 857 So. 2d at 1021). Whether a refusal to pay is considered arbitrary and capricious, or without probable cause, "depends on the facts known to the insurer at the time of its action." *Reed*, 857 So. 2d at 1021.

Further, the bad-faith statutes are penal in nature. Thus, they must be "strictly construed and should not be invoked when the insurer has a reasonable basis for denying coverage." *In re Hannover Corp.*, 67 F.3d 70, 73 (5th Cir. 1995). "If there is a reasonable and legitimate dispute regarding the extent of the insurance claim, the court should not infer bad faith from an insurer's failure to pay within the time limits provided by statute." *Radosta v. Lexington Ins. Co.*, No. 13-4441, 2014 WL 1513424, at *5 (E.D. La. Apr. 16, 2014) (citing *Reed*, 857 So. 2d at 1021). Accordingly, a plaintiff seeking penalties for an insurer's breach of good faith bears a "great" burden of proof. *Lewis v. State Farm Ins. Co.*, 946 So. 2d 708, 725 (La. App. 2 Cir.

2006) (quoting *Holt v. Aetna Cas. & Sur. Co.*, 680 So. 2d 117, 130 (La. App. 2 Cir. 1996)).

## A.    Underinsured Status of Tortfeasor

Hartford first contends that it never received satisfactory proof that Issac was underinsured at the time of the accident.[25]   For purposes of underinsured motorist coverage, an underinsured motor vehicle is one with "automobile liability insurance coverage . . . [of] less than the amount of damages suffered by an insured."  La. Rev. Stat. § 22:1295(2)(b).  "In order for an insured to recover against his UM carrier, he must first prove the UM status of the offending motorist."  *Dean v. State Farm Mut. Auto. Ins. Co.*, 217 So. 3d 611, 616 (La. App. 3 Cir. 2017).  Louisiana Revised Statutes section 22:1295(6) provides a plaintiff with three methods for establishing *prima facie* proof of the underinsured status of a motorist.  These methods include:

> (a) The introduction of sworn notarized affidavits from the owner and the operator of the alleged uninsured vehicle attesting to their current addresses and declaring that they did not have automobile liability insurance in effect covering the vehicle in question on the date of the accident in question;
>
> (b) A sworn notarized affidavit by an official of the Department of Public Safety and Corrections to the effect that inquiry has been made pursuant to R.S. 32:871 by depositing the inquiry with the United States mail, postage prepaid, to the address of the

---

[25]    R. Doc. 16-1 at 11-13.

owner and operator as shown on the accident report, and that neither the owner nor the operator has responded within thirty days of the inquiry, or that the owner or operator, or both, have responded negatively as to the required security, or a sworn notarized affidavit by an official of the Department of Public Safety and Corrections that said department has not or cannot make an inquiry regarding insurance.  This affidavit shall be served by certified mail upon all parties fifteen days prior to introduction into evidence.

(c) any admissible evidence showing that the owner and operator of the alleged uninsured vehicle was a nonresident or not a citizen of Louisiana on the date of the accident in question, or that the residency and citizenship of the owner or operator of the alleged uninsured vehicle is unknown, together with a sworn notarized affidavit by an official of the Department of Public Safety and Corrections to the effect that on the date of the accident in question, neither the owner nor the operator had in effect a policy of automobile liability insurance.

La. Rev. Stat. § 22:1295(6)(a)-(c).

If a plaintiff does not use one of the above enumerated methods, he "has the burden of proving that the offending vehicle was underinsured by other admissible evidence." *Lozano v. Brown*, 60 So. 3d 669, 671 (La. App. 5 Cir. 2011).  "Ordinarily, the plaintiff can satisfy this by introducing the declarations page of the offending driver's liability policy [that] show[s] the policy limits." *See Dean*, 217 So. 3d at 616; *see also Gillmer v. Parish Sterling Stuckey*, 30 So. 3d 782, 788 (La. App. 1 Cir. 2009) (finding that plaintiff met his burden by introducing "certified copies of Progressive's declarations page and policy agreement [that] establish[ed] the monetary limits of the available liability coverage").  Alternatively, a plaintiff can satisfy this burden

by "introducing the testimony or written statement of the offending driver admitting that he had no insurance," or "by showing that [plaintiff's] own UM carrier has judicially confessed liability." *Id.* at 617.

Here, plaintiff does not purport to offer any of the documents referred to in section 1295(6).  Nor does plaintiff assert that he has adhered to any of the other methods regularly recognized by Louisiana courts to establish a tortfeasor's underinsured status. Specifically, he has not provided Hartford with the declaration page of Issac's liability policy with Old American, any statement or testimony from Issac, or any evidence that Hartford judicially confessed liability.[26]  Plaintiff instead asserts that Hartford received proof of Issac's underinsured status through: (1) plaintiff's statement in his initial Rule 26 disclosure that he settled his claim with Old American "for policy limits according to UM-tender for fifteen thousand dollars;"[27] and (2) Old American's "entire claim file" that was provided to Hartford and contained a letter from AFA Claim Services on behalf of Old American, "identifying the

---

[26]   Plaintiff does not dispute that Hartford to date has not received either an affidavit of no other insurance signed by Issac, or a declarations page from Old American stating its policy limits.  R. Doc. 16-3 at 1-2. Instead, plaintiff states that Hartford received proof of loss by other means.  R. Doc. 24-11 at 1.

[27]   R. Doc. 24-1 at 9; R. Doc. 24-8 at 2 (Plaintiff's Initial Disclosures).

subject liability policy and [the] insured's liability policy limits of $15,000.00."[28]

The Court finds that plaintiff has failed to meet his burden of proof of establishing Issac's underinsured status. First, plaintiff's statement that he settled with Old American "for policy limits according to UM-tender for fifteen thousand dollars" does not establish that the $15,000 settlement amount paid by Old American was the entirety of Issac's insurance policy. Plaintiff's own assertion in his initial disclosure does not rise to the level of proof that is required to establish Issac's underinsured status. As explained by a Louisiana court in *Dean*, a plaintiff's "allegation of UM status in the *plaintiff's petition*" does not constitute a judicial confession, given that it is not an admission of an adverse fact, and that such a self-serving allegation is insufficient to establish the scope of liability coverage. *See Dean*, 217 So. 3d at 618 ("The district court aptly noted that if every allegation in a pleading were sufficient to prove a fact, there would never be any need for a trial."). Further, plaintiff has not shown that Issac's policy with Old American was the totality of her insurance coverage at the time of the accident. Given that Issac has never been deposed or provided an affidavit in connection with this case, there remain outstanding questions about whether she was in the scope

---

[28]    R. Doc. 24-1 at 9-10.

of her employment at the time of the accident or whether she lived with someone who had an additional insurance policy.[29]   Thus, plaintiff's statement about his settlement with Old American is insufficient to establish Issac's underinsured status.

Further, the Court finds that the AFA Claim Services letter on behalf of Old American is also insufficient to establish that Issac was an underinsured motorist at the time of the accident.  As an initial matter, the letter is neither sworn nor notarized, nor is it accompanied by an affidavit or a copy of Issac's underlying policy.  *Cf. Gillmer*, 30 So. 3d at 788 (finding that plaintiff provided other admissible evidence to prove the underinsured status of the tortfeasor by introducing "certified copies of Progressive's declarations page and policy agreement [that] establish[ed] the monetary limits of the available liability coverage").  And more critically, plaintiff has not satisfied his burden of establishing that the letter constitutes "admissible evidence" that would appraise Hartford of the tortfeasor's underinsured status.  *See Campbell v. Am. Home Assur. Co.*, 258 So. 2d 81, 86 (La. 1972) (holding that a plaintiff who fails to use one of the statutory methods for establishing the tortfeasor's uninsured status has the burden of proving that fact by other

---

[29]   R. Doc. 16-1 at 12; *see also* R. Doc. 16-7 at 6 (Plaintiff's Answers to Interrogatories).

*admissible* evidence).  For instance, plaintiff has not shown that the letter is admissible in light of the Best Evidence Rule, which states that, "[t]o prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by an Act of Congress."  Fed. R. Evid. 1002.  Because plaintiff is attempting to prove the contents of a writing—an insurance policy's limits— he must, under the Best Evidence Rule, provide that policy.  And because plaintiff has not asserted that the relevant policy is lost or destroyed, he cannot rely on secondary evidence, such as the AFA Claims Services letter, to establish the relevant policy limit.  *See Bituminous Cas. Corp. v. Vacuum Tanks, Inc.*, 975 F.2d 1130, 1132 (5th Cir. 1992) (noting that secondary evidence is admissible "as long as the original . . . [insurance] policy is not available").

In sum, plaintiff has failed to establish Issac's underinsured status through admissible evidence or by any of the statutory methods under section 22:1295(6).  Accordingly, the Court finds that plaintiff has not established that Hartford was "fully apprise[d]" that the alleged tortfeasor was underinsured.  *See Samberg v. Progressive Paloverde Ins. Co.*, No. 16-1754, 2018 WL 627302, at *6 (W.D. La. Jan. 25, 2018) (finding that plaintiff had not provided defendant with sufficient proof of the tortfeasor's lack of

insurance by failing to utilize a method in section 22:1295(6) and instead by relying on records that constituted inadmissible hearsay).

## B.   Causation

Hartford further contends that, even if it had received satisfactory proof that Issac was an underinsured motorist, there remain "reasonable questions concerning whether Plaintiff's alleged injuries are causally related to the accident."[30]   When Koeppel notified Hartford of the accident, he stated that, after the collision, he suffered a "new outset of pain in the left buttock[s] and thigh, . . . numbness in his left great toe," and that an MRI indicated "herniations at L4-L5."[31]   Koeppel further represented in his petition for damages that as a result of the accident he was experiencing pain in his "back and lower extremities."[32]   But Hartford argues that Koeppel's medical records show that he has an extensive prior history of lumbar and radiculopathy complaints, which raises questions as to whether his post-accident treatment was a result of the accident or was instead related to his preexisting conditions.[33]

---

[30]   R. Doc. 16-1 at 15.

[31]   R. Doc. 16-5 at 2 (May 27, 2020 Letter).

[32]   *Id.* ¶ 10; *see also* R. Doc. 16-7 at 2 (Plaintiff's Answers to Interrogatories).   In his response to defendant's interrogatories, plaintiff also noted that the accident "aggravated injuries to [his] neck, left arm[,] and hand." *Id.*

[33]   R. Doc. 29 at 6-10.

Hartford points out that Koeppel's medical records make clear that, since at least 2014, Koeppel has complained of "[b]ack pain and symptoms involving both lower extremities."[34]   Koeppel's medical records from 2014 also state that he suffered from decreased sensation in his "left lower extremity" including "into the big toe."[35]   And to manage his pain, Koeppel has been prescribed a strong pain medication which he has continued to take for about nine years.[36]   Notably, as recently as a month before the accident, Koeppel reported that, although he still had "a fair amount of pain," he had been "managing his pain appropriately" with prescribed pain medication.[37] Hartford also points to Koeppel's recently produced records that note he has had several falls in recent years that have further contributed to pain in his lower extremities.[38]

Hartford also submits the report of Dr. David Aiken, who performed an independent medical examination ("IME") of Koeppel on March 10,

---

[34]   R. Doc. 16-5 at 14 (DIS Medical Record from Dec. 15, 2014).

[35]   R. Doc. 16-6 at 145 (Pontchartrain Chart Note Nov. 18, 2014).

[36]   R. Doc. 16-5 at 10 (LSU Medical Record from Feb. 20, 2020).

[37]   R. Doc. 16-6 at 33 (Pontchartrain Chart Note Jan. 10, 2020).

[38]   R. Doc. 16-6 at 59 (Pontchartrain Chart Note Feb. 14, 2018) (noting that plaintiff complained of right knee and hip pain from two separate falls); R. Doc. 29-1 at 1 (Mayo Clinic Clinical Notes, Mar. 25, 2019) (noting that plaintiff "presents with left shoulder pain that really worsened in January 2019 after he sustained a fall"); *id.* (reporting that plaintiff reported that he "often will trip or drag his left foot").

2021.[39]  After interviewing plaintiff, conducting a physical examination, and reviewing his medical records and radiologic images, Dr. Aiken stated that he "d[id] not find any objective evidence that [Koeppel] suffered any injury to his low back on February 2020."[40]  Specifically, Dr. Aiken compared plaintiff's lumbar MRI images from April 16, 2020 (post-accident) to his lumbar MRI images from December 15, 2014 (pre-accident), and concluded that the "images are unchanged . . . except for some mild increase in the facet joint degeneration at L3-4 and L4-5 which is expected with the passage of 5 ½ years."[41]

Plaintiff disputes that the accident exacerbated a preexisting condition, and instead argues that he has established causation by providing Hartford with "expert reports from numerous physicians treating [him] for the injuries [he] sustained in the underlying automobile accident."[42]  For example, one of Koeppel's treating physicians, Dr. Keith Melancon, stated that it was his "[a]ssessment" that plaintiff had a "[n]ew herniation following a motor vehicle collision."[43]  Plaintiff also points to another of his treating physicians, Dr. Brett Freedman, whose patient note states that Koeppel "has

---

[39]   R. Doc. 16-10 at 1-19 (IME).

[40]   *Id.* at 13.

[41]   *Id.* at 12.

[42]   R. Doc. 24-1 at 10; R. Doc. 24-11 at 2.

[43]   *Id.*

had chronic back and left lower extremity symptoms, which acutely worsened following a motor vehicle accident in February 2020."[44]

Here, the Court finds that plaintiff's history of preexisting conditions, and periodic trips and falls, in combination with the opinions of plaintiff's treating physicians and Dr. Aiken, support a finding that the parties reasonably dispute causation in this case. In cases with similar factual disputes with respect to causation, courts have found that the insurer presented a reasonable defense for its refusal to make a payment. *See Discon v. McNeil*, No. 14-392, 2016 WL 6946981, at *6 (E.D. La. Nov. 28, 2016) (granting defendant's motion for partial summary judgment on plaintiff's bad-faith claims because "conflicting testimony" from an IME report and plaintiff's treating physician gave "rise to a factual question of whether there was coverage based on the extent to which the accident caused or accelerated [plaintiff's] injuries"); *see also Bell v. Steckler*, 285 So. 3d 561, 571-72 (La. App. 5 Cir. 2019) (finding that evidence from plaintiff's medical records that he complained of back and shoulder pain prior to the accident and an IME report that found plaintiff's injuries "pre-existed the accident in question" established a "reasonable disagreement between the insurer and the insured"). The Court thus finds that, under these circumstances, Hartford

---

[44]     R. Doc. 24-9 at 3 (Mayo Clinic Clinical Notes, June 8, 2021).

reasonably questioned whether there is a causal connection between plaintiff's alleged injuries and treatments, and therefore cannot be found to have acted in bad faith in denying tender. *See Lemoine v. Mike Munna, LLC*, 148 So. 3d 205, 215 (La. App. 1 Cir. 2014) ("[W]hen there is a reasonable and legitimate question as to the extent and causation of a claim, bad faith should not be inferred from an insurer's failure to pay within the statutory time limits when such reasonable doubts exist." (citing *Reed*, 857 So. 2d at 1021))).

### C.    Partial Tender

Finally, the parties dispute whether Hartford's failure to make a partial tender of a minimum of $60,000 amounts to "vexatious" conduct.[45]  Plaintiff contends that Hartford had sufficient proof that the tortfeasor's liability policy was capped at $15,000, and that plaintiff's damages far exceeded that amount.   Further, because Hartford removed the case to federal court, Koppel argues that Hartford has "admit[ed]" that his claim exceeds $75,000. Accordingly, plaintiff represents that Hartford acted in bad faith by failing to make a partial tender of at least $60,000.  The Court finds this argument meritless.  Contrary to plaintiff's assertion, Hartford's representation in its

---

[45]    R. Doc. 24-1; R. Doc. 29 at 1-2.

notice of removal that the amount in controversy requirement was met because "plaintiff seeks monetary damages in excess of $75,000," is not an admission that defendant believes that plaintiff's claim actually has a value of over $75,000.[46] *Cf. De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1409 (5th Cir. 1995) (noting that the "amount in controversy is met by the express allegations of the plaintiff's complaint"). Moreover, as discussed above, there are sufficient grounds for Hartford's doubt regarding both causation and the tortfeasor's underinsured status. Given these outstanding disputes, Hartford was not required to tender payment. *See Demma v. Auto. Club Inter-Ins. Exch.*, 15 So. 3d 95, 103 (La. 2009) ("The statute thus requires the insurer to pay only when it indisputably owes payment under the insurance contract and only the amount that it indisputably owes.").

Given that Hartford lacked satisfactory proof of loss, bad faith cannot be inferred by its decision not to "simply pay[] the claim without question." *Duhon v. State Farm Mut. Auto Ins. Co.*, 952 So. 2d 908, 912 (La. App. 3 Cir. 2007). Because plaintiff has submitted no other evidence that Hartford acted in an arbitrary and capricious manner or without probable cause, the Court grants Hartford's partial summary-judgment motion. *See Bell*, 285 So. 3d at 570 ("[S]ummary judgment has been found to be appropriate when

---

[46]    R. Doc. 29 at 2.

there is no evidence of an insurer's bad faith conduct."); *see also Daniels v. Scottsdale Ins. Co.*, No. 19-10632, 2020 WL 7183364, at *5 (E.D. La. Dec. 7, 2020) (granting an insurer's partial summary judgment on bad faith when the insurer "reasonably questioned the extent of its liability for the claimed loss").

## IV.   CONCLUSION

For these reasons, the Court grants Hartford's motion for partial summary judgment, and dismisses Koeppel's bad-faith claims under Louisiana Revised Statutes sections 22:1892 and 22:1973.

New Orleans, Louisiana, this __2nd__ day of May, 2022.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE